Charles J. **PULLEY**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 85–1476.

District of Columbia Court of Appeals.

Submitted Sept. 21, 1987.

Decided Oct. 26, 1987.

Edward C. Sussman, Washington, D.C., for appellant.

Dennis R. Carluzzo, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and G. Paul Howes, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant Pulley of one count of possession of heroin, D.C. Code § 33–541(d) (1987 Supp.). Pulley moved for a new trial on the ground that the trial court erroneously had quashed a subpoena for defense witness Francis Miles. The court denied the motion, sentenced Pulley to one year of imprisonment, and imposed a $1,000 fine. On appeal, Pulley renews his contention that the trial court erred in quashing the subpoena for Miles. He asks that we reverse and remand the case for consideration of an unresolved issue: whether Miles may refuse to testify for the defense by invoking his fifth amendment privilege against self-incrimination. We agree that the trial court erroneously quashed the subpoena. Without reversing

the conviction, however, we remand the case for resolution of Miles' alleged right not to testify.

Pulley and Miles were arrested together and charged with drug offenses. The charges against Miles were later dropped, but Pulley was prosecuted for possession with intent to distribute heroin. D.C.Code § 33–541(a)(1) (1987 Supp.). Desiring to have Miles testify for the defense, Pulley sent a subpoena to Miles by first class mail on July 15, 1985, requesting his appearance at trial on August 21, 1985. Miles received the subpoena, acknowledged service in a telephone conversation with counsel for Pulley on August 16, 1985, appeared in court at 8:30 a.m. on the date requested, and was introduced to the jury. When it became apparent to defense counsel that the proceedings would not reach Miles' testimony that day, he excused Miles until the following day.

The next day, counsel for Miles appeared in court without Miles. The trial court asked where the witness was, noting that Miles was under subpoena. Miles' counsel replied that Miles was in the witness lounge. He then brought to the court's attention, for the first time, that Miles had been improperly served—that the subpoena had been mailed, not personally served, as required by Super.Ct.Crim.R. 17(d).[1] Upon confirming that Miles had actually received the document, the court ordered counsel to produce Miles despite the claim of defective service. Counsel did so. Without further objection from Miles' counsel, the court then conducted a *voir dire* to assess Miles' assertion of the fifth amendment right not to testify.

Miles answered all questions from counsel for Pulley and for the government during *voir dire* without invoking the fifth amendment and without objection by his counsel. During the course of the government's cross-examination, the trial court expressed concern that Miles was not invoking the fifth amendment according to

established procedures. *See Jaggers v. United States*, 482 A.2d 786 (D.C.1984); *Davis v. United States*, 482 A.2d 783 (D.C. 1984); *Salim v. United States*, 480 A.2d 710 (D.C.1984). After noting the confusion of Miles' counsel about those procedures, the court admonished counsel to study the relevant authorities. The court then pointed out that, because no motion to quash the subpoena had been filed ahead of time, "the subpoena was of continuing validity in this Court's judgment." The court concluded the session by requiring Miles to return on August 26.

Upon returning to court, Miles, through counsel, presented a written motion to quash his subpoena. The motion was premised both on improper service of process and on Miles' fifth amendment privilege. In contrast with its earlier understanding, the court granted the motion on account of improper service, without reaching the fifth amendment issue. We agree with appellant that the trial court erred.

One who receives a subpoena but claims a reason not to honor it must promptly communicate the excuse to the court. "[I]f a person attends before a court in response to a subpoena, submits ... to be sworn to testify as a witness in the proceeding, and no objection is raised as to the services of the process until afterwards, during the course of examination, he may be said to have waived defects in the service of the subpoena, submitted himself to the jurisdiction of the court, and qualified as a witness." *In re Hall*, 296 F. 780, 782 (S.D.N.Y.1924), *cited in* Cyc.Fed.Proc. § 26.20 (3rd ed. 1984). In *Hall* the witness, a resident of Connecticut, was served with a subpoena for a bankruptcy proceeding in New York while he was there for the sole purpose of pleading to an indictment. He went "forthwith" to the referee in bankruptcy, as demanded by the subpoena, and gave sworn testimony. The examination was continued to another date. A month

---

1. Super.Ct.Crim.R. 17(d) provides in relevant part:

   *Service.* A subpoena may be served by the Marshal, by his deputy or by any other person who is not a party and who is not less than 18 years of age. Service of a subpoena shall be made by delivering a copy thereof to the person named and by tendering to him the fee for 1 day's attendance and the mileage allowed by law.

later, the witness moved to set aside service on the grounds of immunity and inadequate mileage fees. The district court affirmed the referee's denial of the motion on the basis that the witness had waived his objection.

Irrespective of whether the witness's objection was immunity from process, as in *Hall,* or improper mode of service, as in this case, the witness presumably would have had a valid basis for quashing the subpoena had he communicated that objection in time; one can appear specially for the purpose of quashing a subpoena without subjecting oneself personally to the jurisdiction of the court. *See CF & I Steel Corp. v. Mitsui & Co. (U.S.A.) Inc.,* 713 F.2d 494 (9th Cir.1983) (affirmed district court's quashing of subpoena for failure concurrently to tender adequate witness and mileage fees, without reaching issue of immunity from service). But Miles did not so limit his appearance.

On the first day of trial, Miles appeared in court in compliance with the subpoena, was introduced to the jury, and waited to be called for his testimony. He made no complaint about the mode of service. The next day, although Miles' counsel did mention defective service, neither Miles nor his counsel objected when the court ordered Miles, despite the alleged service defect, to take the stand at the *voir dire* to determine whether Miles, given his fifth amendment right, had "any obligation to testify or not on the basis of those questions." Apparently, therefore, Miles and his counsel were willing to proceed on their alternative, constitutional ground for declining to testify. Thus, we are not dealing with a case in which the witness appeared solely to contest the subpoena. This case, rather, is more akin to *Hall.* By the time Miles filed the motion to quash he had waived any objection to defective service; the critical point is that he was sworn and elected to proceed to *voir dire* rather than to appear specially in an effort to quash. Accordingly, the only "fair and proper conclusion" on the subpoena issue is to sustain Miles' court-ordered appearance for *voir dire.* *Hall,* 296 F. at 782.

Instead of perceiving a waiver, the trial court apparently conceptualized the subpoena issue as one where a dormant, potentially fatal defect could overtake the subpoena *at any time* once Miles properly cited that defect in a formal motion to quash. Since the witness eventually filed such a motion, the court believed it did not "have much choice except to quash the subpoena," regardless of the timing and circumstances. This conceptual approach is faulty. The witness acknowledged receipt of the subpoena. In communications, through counsel, with the defense, he gave no indication that he objected to the imperfect service. Then, on the third day of trial, the court quashed the subpoena, after Miles had been introduced to the jury, after several witnesses had testified and the prosecution had rested, and after Miles had subjected himself, without serious objection, to the *voir dire* examination of his potential testimony to determine whether he could invoke his fifth amendment privilege. This conduct, culminating in a willingness to be sworn to testify on *voir dire* as to his fifth amendment objection, resulted in a waiver of his right to contest the subpoena.

By rejecting the trial court's quashing of the subpoena, we do not vacate the judgment of conviction, for after remand Miles' testimony may still be prohibited by his fifth amendment privilege against self-incrimination. If the trial court concludes, upon remand, that Miles cannot lawfully invoke the privilege and thus can be compelled to testify, then "the trial judge must determine whether the exclusion of [his] testimony was harmless beyond a reasonable doubt, or whether a new trial ... is required." *Salim,* 480 A.2d at 716 (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). But if the trial court sustains Miles' fifth amendment privilege, then the result, in practical effect, will be the same as if the quashing of Miles' subpoena had been lawful—in which case Pulley's conviction shall stand, subject to the right of appeal on the fifth amendment issue.

*Remanded for further proceedings consistent with this opinion.*